**UNITED STATES of America,
Plaintiff,**

v.

**William Dunavant MASK, III and
Mask Cotton Company, Inc.,
Defendants.**

No. 99–20260 D.

United States District Court,
W.D. Tennessee,
Western Division.

April 27, 2000.

Michael J. Stengel, Stengel Law Firm, Memphis, TN, Daniel A. Clancy, Anderson Law Firm, Jackson, TN, for William Dunavant Mask, defendants.

William Dunavant Mask, III, Germantown, TN, pro se.

Lawrence J. Laurenzi, Carroll L. Andre, III, U.S. Attorney's Office, Memphis, TN, for U.S. Attorneys.

## ORDER DENYING DEFENDANTS' MOTION TO DISMISS PURSUANT TO DOUBLE JEOPARDY AND COLLATERAL ESTOPPEL

DONALD, District Judge.

Before the court is the motion of the defendants, William Dunavant Mask, III and Mask Cotton Company, Inc. (hereinafter collectively the "Masks"), to dismiss on the basis of double jeopardy and collateral estoppel. The United States opposes the motion.

### FACTS

On or about April 15, 1994, the Masks signed an agreement and registered to participate as a cotton exporter in the Upland Cotton User Marketing Certificate Program implemented under the Food, Agricultural, Conservation and Trade Act of 1990. The Masks accomplished this by completing and signing Form CCC–1045. The agreement and the applicable regulations, 7 C.F.R. §§ 1427.100 et seq., provide that participating exporters must register all export contracts with the Commodity Credit Corporation of the United States Department of Agriculture (hereinafter "CCC") and that failure to fulfill the export contract terms or the filing of false claims will result in the exporter being required to refund the program payments and pay liquidated damages.

On November 23, 1994, the Masks contracted to export 4,000 metric tons (about 18,000 bales) of cotton to Da Hua. Originally, the cotton was shipped in two equal installments in January and February, 1995. The Masks represented to the Farm Service Agency that it has shipped all but 5,000 bales of cotton and the Masks received a subsidy payment for the cotton shipped. As a result of its failure to ship the entire amount of cotton, the Masks faced liquidated damages.

In April, 1995, upon receipt of the shipped cotton, Da Hua was not satisfied with the quality of the cotton, and refused to extend its letter of credit to permit the Masks to ship the balance of the cotton. The remaining 5,000 bales of cotton were not shipped.

On or about September 12, 1995, the Masks asked the Farm Service Agency to cancel the balance of the contract. The Farm Service Agency found that the Masks had had sufficient time to find a replacement contract and issued a liquidated damages penalty against the Masks on or about November 3, 1995, in the amount of $25,000. The hearing before the Farm Service Agency was administrative and Da Hua was not a participant. Further, the issue of fraud was not raised before the Farm Service Agency.

The Masks appealed the ruling to the United States Department of Agriculture National Appeals Division which conducted a hearing. The National Appeals Board held that Masks' failure to deliver the balance of the cotton was beyond its control and relieved it of the liquidated damages penalty. See W.D. Mask Cotton Co. v. Farm Service Agency, NAD Log No. 96000724 S..

Subsequently, the Masks were indicted on November 18, 1999 (Grand Jury 1999–1), on various charges. The essential nature of the charges in the indictment are as follows:

1. violation of 18 U.S.C. § 1343, executing a scheme and artifice to defraud and obtain money by means of a wire communication dated March 13, 1995 in the amount of $428,580.77;

2. violation of 18 U.S.C. § 1343, executing a scheme and artifice to defraud and obtain money by means of a wire communication dated March 20, 1995 in the amount of $328,150.17;

3. violation of 18 U.S.C. § 1343, executing a scheme and artifice to defraud and obtain money by means of a wire communication dated March 27, 1995 in the amount of $145,507.70;

4. violation of 18 U.S.C. § 1343, executing a scheme and artifice to defraud and obtain money by means of a wire commu-

nication dated April 17, 1995 in the amount of $279,444.68;

5. violation of 18 U.S.C. § 1341, executing a scheme and artifice to defraud and obtain money, on or about March 22, 1995, by depositing with a commercial carrier an envelope containing a USDA Form CCC 1045–1 Application for Payment, pertaining to Agreement Number E–5048, Application Number 32, in the approximate amount of $15,237.81;

6. violation of 18 U.S.C. § 1341, executing a scheme and artifice to defraud and obtain money, on or about April 6, 1995, by depositing with the United States Postal Service an envelope containing a USDA Form CCC 1045–1 Application for Payment, pertaining to Agreement Number E–5048, Application Number 33, in the approximate amount of $9,952.66;

7. violation of 18 U.S.C. § 1341, executing a scheme and artifice to defraud and obtain money, on or about April 4, 1995, by depositing with the United States Postal Service an envelope containing a USDA Form CCC 1045–1 Application for Payment, pertaining to Agreement Number E–5048, Application Number 34, in the approximate amount of $4,370.12;

8. violation of 18 U.S.C. § 1341, executing a scheme and artifice to defraud and obtain money, on or about April 21, 1995, by depositing with a commercial carrier an envelope containing a USDA Form CCC 1045–1 Application for Payment, pertaining to Agreement Number E–5048, Application Number 36, in the approximate amount of $11,928.55;

9. violation of 18 U.S.C. § 1001, knowingly and willfully making and causing to be made a false writing and document, knowing the same to contain false, fictitious, and fraudulent statements and entries as to a material fact in a matter within the jurisdiction of the Commodity Credit Corporation, U.S. Department of Agriculture, *to wit:* in Invoice 2000226, pertaining to Agreement Number E–5048, Application Number 32, between on or about November 23, 1994 and April 17, 1995;

10. violation of 18 U.S.C. § 287, knowingly and willfully presenting and causing to be presented to the Commodity Credit Corporation, U.S. Department of Agriculture, a claim upon and against said department and agency, *to wit:* a USDA Form CCC 1045–1 Application for Payment, pertaining to Agreement Number E–5048, Application Number 32, in the approximate amount of $15,237.81, then knowing such claim to be false, fictitious, and fraudulent, between on or about November 23, 1994 and April 17, 1995;

11. violation of 18 U.S.C. § 287, knowingly and willfully presenting and causing to be presented to the Commodity Credit Corporation, U.S. Department of Agriculture, a claim upon and against said department and agency, *to wit:* a USDA Form CCC 1045–1 Application for Payment, pertaining to Agreement Number E–5048, Application Number 33, in the approximate amount of $9,952.66, then knowing such claim to be false, fictitious, and fraudulent, between on or about November 23, 1994 and April 17, 1995;

12. violation of 18 U.S.C. § 287, knowingly and willfully presenting and causing to be presented to the Commodity Credit Corporation, U.S. Department of Agriculture, a claim upon and against said department and agency, *to wit:* a USDA Form CCC 1045–1 Application for Payment, pertaining to Agreement Number E–5048, Application Number 34, in the approximate amount of $4,370.12, then knowing such claim to be false, fictitious, and fraudulent, between on or about November 23, 1994 and April 17, 1995; and

13. violation of 18 U.S.C. § 287, knowingly and willfully presenting and causing to be presented to the Commodity Credit Corporation, U.S. Department of Agriculture, a claim upon and against said department and agency, *to wit:* a USDA Form CCC 1045–1 Application for Payment, pertaining to Agreement Number E–5048,

Application Number 36, in the approximate amount of $11,928.55, then knowing such claim to be false, fictitious, and fraudulent, between on or about November 23, 1994 and April 17, 1995.

## STANDARD OF LAW

### Double Jeopardy Clause

■ The Double Jeopardy Clause of the Fifth Amendment of the Bill of Rights states that no person shall "for the same offense ... be twice put in jeopardy of life or limb." [1] Essentially, the Double Jeopardy Clause provides three protections: 1) protection against a second prosecution for the same offense after acquittal; [2] 2) protection against a second prosecution for the same offense after conviction; [3] and 3) protection against multiple punishments for the same offense. [4] *Illinois v. Vitale,* 447 U.S. 410, 415, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980); *United States v. Dinitz,* 424 U.S. 600, 606, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976); *United States v. Wilson,* 420 U.S. 332, 343, 95 S.Ct. 1013, 43 L.Ed.2d 232 (1975); *Murr v. United States,* 200 F.3d 895, 900 (6th Cir.2000); *Terry v. Potter,* 111 F.3d 454, 456 (6th Cir.1997).

The underlying purpose of the Double Jeopardy Clause is to protect the individual from repeated attempts by the government to obtain a conviction [5] or multiple punishments and to prevent the State, with all its power and resources, to subject a person to the embarrassment, expense, and ordeal of repeated attempts to convict as well as preventing the enhanced possibility that, even though innocent, the accused may eventually be found guilty. *See United States v. Jorn,* 400 U.S. 470, 490, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971); *Brown v. Ohio,* 432 U.S. 161, 165, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977); *Green v. United States,* 355 U.S. 184, 187–88, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957); *United States v. Gamble,* 141 F.3d 621, 623 (6th Cir.1998). The Clause serves as a restraint on the courts and prosecutors. The Double Jeopardy Clause also protects the defendant's "valued right to have his trial completed by a particular tribunal." *Oregon v. Kennedy,* 456 U.S. 667, 671–72, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982); *Wade v. Hunter,* 336 U.S. 684, 689, 69 S.Ct. 834, 93 L.Ed. 974 (1949); *United States v. Stevens,* 177 F.3d 579, 583 (6th Cir.1999).

■ Under the doctrine of dual sovereignty, prosecution by a State does not bar Federal prosecution for the same offense and vice versa. *United States v. Wheeler,* 435 U.S. 313, 316–17, 98 S.Ct. 1079, 55 L.Ed.2d 303 (1978); *Bartkus v. Illinois,*

---

1. Even though the Double Jeopardy Clause only states "life or limb" it has been held to also protect against imprisonment and monetary penalties. *Department of Revenue of Montana v. Kurth Ranch,* 511 U.S. 767, 769 n. 1, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994).

2. When the acquittal is before a jury, the bar is absolute. *Ball v. United States,* 163 U.S. 662, 16 S.Ct. 1192, 41 L.Ed. 300 (1896). However, an acquittal before a judge may be subject to re-prosecution depending on how the trial judge frames the ruling. *See Sanabria v. United States,* 437 U.S. 54, 98 S.Ct. 2170, 57 L.Ed.2d 43 (1978); 5 LaFave, Israel, & King, *Criminal Procedure* § 25.3(c) (West 1999).

 A finding of insufficient evidence is equivalent to an acquittal for the purposes of double jeopardy. *Richardson v. United States,* 468 U.S. 317, 325–26, 104 S.Ct. 3081, 82 L.Ed.2d 242 (1984).

3. An exception to this bar is when the conviction is overturned on appeal. *Ball v. United States,* 163 U.S. 662, 16 S.Ct. 1192, 41 L.Ed. 300 (1896); *United States v. Tateo,* 377 U.S. 463, 466, 84 S.Ct. 1587, 12 L.Ed.2d 448 (1964).

4. The Double Jeopardy Clause applies to both individuals and corporations. *United States v. Martin Linen Supply Co.,* 430 U.S. 564, 97 S.Ct. 1349, 51 L.Ed.2d 642 (1977).

5. *Compare Brown,* 432 U.S. at 169, 97 S.Ct. 2221 (holding that the prosecution cannot divide a single crime into multiple units to avoid double jeopardy) *with Ciucci v. Illinois,* 356 U.S. 571, 78 S.Ct. 839, 2 L.Ed.2d 983 (1958)(holding that separate trials for multiple murders committed at the same time by the same person are permissible, absent fundamental unfairness).

359 U.S. 121, 132–33, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959); *United States v. Holmes*, 111 F.3d 463, 467 (6th Cir.1997). However, dual sovereignty does not allow successive prosecutions in courts which are creations emanating from the same sovereign entity. *Heath v. Alabama*, 474 U.S. 82, 88–89, 106 S.Ct. 433, 88 L.Ed.2d 387 (1985); *Puerto Rico v. Shell Co.*, 302 U.S. 253, 264–66, 58 S.Ct. 167, 82 L.Ed. 235 (1937)(concerning prosecutions by Federal and territorial courts). *See also Waller v. Florida*, 397 U.S. 387, 392–95, 90 S.Ct. 1184, 25 L.Ed.2d 435 (1970)(concerning prosecutions by a State and political subdivisions of that State); *Douglas v. Nixon*, 459 F.2d 325, 326 (6th Cir.1972), *cert. denied*, 409 U.S. 1010, 93 S.Ct. 453, 34 L.Ed.2d 303 (1972).

■ The protection of the Double Jeopardy Clause does not apply until a defendant is put to trial before the trier of fact.[6] *Serfass v. United States*, 420 U.S. 377, 388, 95 S.Ct. 1055, 43 L.Ed.2d 265 (1975); *United States v. Gamble*, 141 F.3d 621, 623 (6th Cir.1998). In jury trials, it attaches when a jury is empaneled and sworn. *Crist v. Bretz*, 437 U.S. 28, 36, 98 S.Ct. 2156, 57 L.Ed.2d 24 (1978); *Serfass*, 420 U.S. at 388, 95 S.Ct. 1055; *Terry v. Potter*, 111 F.3d 454, 456 (6th Cir.1997). In non-jury trial trials, it attaches when the first witness is sworn and the court begins to hear evidence. *Crist*, 437 U.S. at 37 n. 15, 98 S.Ct. 2156; *Serfass*, 420 U.S. at 388, 95 S.Ct. 1055. If a case is dismissed prior to the defendant being put to trial before the trier of fact (*e.g.*, by a motion to dismiss under Fed.R.Civ.P. 12(b)), then double jeopardy protections will not attach. *See Serfass*, 420 U.S. at 389–91, 95 S.Ct. 1055; *United States v. Gamble*, 141 F.3d 621, 623 (6th Cir.1998). *See also United States v. Pi*, 174 F.3d 745, 748–49 (6th Cir.1999)(holding that the dismissal of an indictment before trial and

institution of a superseding indictment does not trigger double jeopardy), *cert. denied*, —— U.S. ——, 120 S.Ct. 74, 145 L.Ed.2d 63 (1999).

■ However, under certain circumstances, another prosecution may be allowed even after the defendant has been put to trial before a trier of fact. *See Wade v. Hunter*, 336 U.S. 684, 688–89, 69 S.Ct. 834, 93 L.Ed. 974 (1949)(holding that the Double Jeopardy Clause does not mandate that every time a defendant is put to trial before a competent tribunal, he is entitled to go free if that trial fails to end in a final judgment). *See also United States v. Love*, 597 F.2d 81, 86 (6th Cir. 1979). One of these circumstances is the declaration of a mistrial.

■ Generally, when a mistrial has been declared without the defendant's request or consent, a retrial will only be allowed when there is a "manifest necessity" for the mistrial or the ends of public justice would be defeated. *Richardson v. United States*, 468 U.S. 317, 323–24, 104 S.Ct. 3081, 82 L.Ed.2d 242 (1984); *United States v. Dinitz*, 424 U.S. 600, 606–08, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976); *Illinois v. Somerville*, 410 U.S. 458, 461–63, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973)(citing *United States v. Perez*, 22 U.S. (9 Wheat) 579, 6 L.Ed. 165 (1824)); *United States v. Stevens*, 177 F.3d 579, 583 (6th Cir.1999). The Court has more precisely defined the "ends of public justice" as the public's interest in a fair trial designed to end in just judgments. *Illinois v. Somerville*, 410 U.S. 458, 463, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973); (citing *Wade v. Hunter*, 336 U.S. 684, 689, 69 S.Ct. 834, 93 L.Ed. 974 (1949)).

The standard for application of the manifest necessity test is that of a "high degree" of necessity. *Arizona v. Washington*, 434 U.S. 497, 506, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978); *United States v. Kin-*

---

**6.** However, if a defendant withholds a motion to dismiss until after being put to trial before the trier of fact, when the motion should have been brought before trial, double jeopardy might not attach. *See Lee v. United States*, 432 U.S. 23, 97 S.Ct. 2141, 53 L.Ed.2d 80 (1977).

*caide,* 145 F.3d 771, 781 (6th Cir.1998), *cert. denied, sub nom., Key v. United States,* 525 U.S. 1166, 119 S.Ct. 1085, 143 L.Ed.2d 86 (1999). In *Washington,* the Supreme Court indicated that the easiest justification for applying manifest necessity was when the jury was deadlocked.[7] *Washington,* 434 U.S. at 509, 98 S.Ct. 824. *See also Richardson v. United States,* 468 U.S. 317, 323–24, 104 S.Ct. 3081, 82 L.Ed.2d 242 (1984); *Daniels v. Burke,* 83 F.3d 760, 763 (6th Cir.1996). The application of the test is left to the broad discretion of the trial judge. *Illinois v. Somerville,* 410 U.S. 458, 461–63, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973)(citing *United States v. Perez,* 22 U.S. (9 Wheat) 579, 6 L.Ed. 165 (1824)). *See also United States v. Stevens,* 177 F.3d 579, 583 (6th Cir.1999)(recognizing the range of discretion of the trial judge).

▮ Generally, if the defendant requests the mistrial, then the protections of the Double Jeopardy Clause will not attach.[8] *Oregon v. Kennedy,* 456 U.S. 667, 672–73, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982); *United States v. Gantley,* 172 F.3d 422, 427 (6th Cir.1999). More specifically, double jeopardy does not bar retrial where the defendant terminated the trial on grounds unrelated to guilt or innocence. *United States v. Scott,* 437 U.S. 82, 96, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978); *United States v. Dakota,* 197 F.3d 821, 826 (6th Cir.1999). However, if the defendant's motion for a mistrial is due to governmental actions intended to provoke the motion for mistrial, then the Double Jeopardy Clause will apply. *Kennedy,* 456 U.S. at 674–78, 102 S.Ct. 2083.

▮ The first step in determining whether double jeopardy applies is to examine the statutes and determine if Congress intended that each violation be punished separately.[9] *Garrett v. United States,* 471 U.S. 773, 778–79, 105 S.Ct. 2407, 85 L.Ed.2d 764 (1985); *Jeffers v. United States,* 432 U.S. 137, 155, 97 S.Ct. 2207, 53 L.Ed.2d 168 (1977); *United States v. Hebeka,* 89 F.3d 279, 282 (6th Cir.1996), *cert. denied,* 519 U.S. 999, 117 S.Ct. 496, 136 L.Ed.2d 388 (1996). If this step is inconclusive then to determine whether a defendant has been subjected to successive prosecutions for the same offense, the court must apply the same elements test. *Ball v. United States,* 470 U.S. 856, 861, 105 S.Ct. 1668, 84 L.Ed.2d 740 (1985); *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932); *Murr v. United States,* 200 F.3d 895, 900 (6th Cir. 2000); *United States v. Forman,* 180 F.3d 766, 768–69 (6th Cir.1999). The same elements test consists of examining the two statutes in question and determining whether each statute requires the proof of an additional fact which the other statute does not.[10] If not, then the protections of the Double Jeopardy Clause will apply.

For example, the Supreme Court has held that the crimes of receiving a firearm and possessing a firearm, although listed in different statutes, constitute the same crime for double jeopardy purposes. *Ball v. United States,* 470 U.S. 856, 861–62, 105 S.Ct. 1668, 84 L.Ed.2d 740 (1985). Howev-

---

7. In contrast, the *Washington* Court stated that application of manifest necessity when the prosecution requested a mistrial to obtain more evidence was deserving of the strictest scrutiny as it was this very behavior which the Double Jeopardy Clause was intended to prohibit. *Washington,* 434 U.S. at 507–08, 98 S.Ct. 824. *See also United States v. Stevens,* 177 F.3d 579, 583 (6th Cir.1999).

8. Consent can be implied, but only when there is a positive indication in the record of the defendant's consent. *Gantley,* 172 F.3d at 428.

9. To be determinative, Congressional intent must be clear from the face of the statute or the legislative history. *Missouri v. Hunter,* 459 U.S. 359, 368, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983).

10. The analysis must focus on the statutory elements required for each offense as opposed to the actual evidence presented at trial. *Illinois v. Vitale,* 447 U.S. 410, 416, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980).

er, the court has also held that the commission of a substantive crime and conspiracy to commit that crime are different offenses for double jeopardy. *United States v. Felix*, 503 U.S. 378, 391–92, 112 S.Ct. 1377, 118 L.Ed.2d 25 (1992); *Murr v. United States*, 200 F.3d 895, 902 (6th Cir. 2000). *See also United States v. Avery*, 128 F.3d 966, 971–72 (6th Cir.1997)(holding that convictions for the crimes of conspiracy and continuing criminal enterprise violate double jeopardy). *But see Garrett v. United States*, 471 U.S. 773, 105 S.Ct. 2407, 85 L.Ed.2d 764 (1985)(holding that conviction of and punishment for both the underlying predicate offense and continuing criminal enterprise does not violate double jeopardy).

■ If violation of one of the statutes entails violation of the other, then the defendant shall be protected by the Double Jeopardy Clause. In other words, generally, where one offense is a lesser included offense to a greater offense, the protections of the Double Jeopardy Clause apply.[11] *Brown v. Ohio*, 432 U.S. 161, 166 n. 6, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977); *United States v. Avery*, 128 F.3d 966, 972–73 (6th Cir.1997). However, the rule will not apply where the defendant is tried in a single trial on both charges and proof of the greater charge depends upon proving all the facts of the lesser included charge.[12] *See Harris v. Oklahoma*, 433 U.S. 682, 97 S.Ct. 2912, 53 L.Ed.2d 1054 (1977). In such a situation, however, where the de-

fendant is convicted of both the greater and lesser included offense at a single trial, generally the punishment for the lesser offense is merged into the punishment for the greater offense. *Whalen v. United States*, 445 U.S. 684, 693–95, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980); *Pandelli v.United States*, 635 F.2d 533, 539 (6th Cir.1980).

■ Further, there is another exception to the bar to re-trial. If a defendant is convicted of a lesser offense, and the events which are necessary for the greater offense have not yet occurred before the start of the trial for the lesser offense, then a second trial on the greater offense will be permitted. *See Jeffers v. United States*, 432 U.S. 137, 151–52, 97 S.Ct. 2207, 53 L.Ed.2d 168 (1977).

■ In the context of punishment,[13] the Double Jeopardy Clause prevents the courts, through the use of multiple punishments, from exceeding the punishments prescribed by the legislature.[14] *Jones v. Thomas*, 491 U.S. 376, 381–82, 109 S.Ct. 2522, 105 L.Ed.2d 322 (1989); *Brown v. Ohio*, 432 U.S. 161, 165, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977); *Pryor v. Rose*, 724 F.2d 525, 529 (6th Cir.1984). If two statutes proscribe the same offense, they are to be construed as not authorizing cumulative punishments unless clearly indicated by Congress. *Whalen v. United States*, 445 U.S. 684, 691–92, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980); *United States v.*

11. The chronological order of the trials, whether the first trial is for the greater offense or for the lesser included offense, is immaterial for the purposes of the Double Jeopardy Clause. *Jeffers v. United States*, 432 U.S. 137, 150–51, 97 S.Ct. 2207, 53 L.Ed.2d 168 (1977).

12. If the defendant specifically requests a separate trial for the lesser included and the greater offense, then the Double Jeopardy Clause will not apply. *Jeffers v. United States*, 432 U.S. 137, 152, 97 S.Ct. 2207, 53 L.Ed.2d 168 (1977). A defendant will, likewise, not be able to later claim the protection of the Double Jeopardy Clause if he fails to object to a separate trials.

13. Detention, alone, in the civil context, does not necessarily constitute punishment under the Double Jeopardy Clause, especially in the context of mental health commitments. *Kansas v. Hendricks*, 521 U.S. 346, 363, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997); *United States v. Salerno*, 481 U.S. 739, 746, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987).

14. However, where a statute authorizes both a monetary fine and a prison sentence, the Double Jeopardy Clause is not offended. *Whalen v. United States*, 445 U.S. 684, 688–89, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980).

*Johnson,* 22 F.3d 106, 108 (6th Cir.1994). But when determining punishment for two *distinct* offenses, the court must recognize that there is a presumption that Congress intended to permit cumulative sentences. *Garrett v. United States,* 471 U.S. 773, 793–94, 105 S.Ct. 2407, 85 L.Ed.2d 764 (1985)(emphasis added).

 The question of double jeopardy in punishment is frequently raised concerning civil and criminal penalties.[15] Generally, the Double Jeopardy Clause protects against only multiple criminal punishments[16] and does not include civil sanctions. *Hudson v. United States,* 522 U.S. 93, 98–99, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997); *Helvering v. Mitchell,* 303 U.S. 391, 399, 58 S.Ct. 630, 82 L.Ed. 917 (1938)(holding Congress may impose civil and criminal sanctions with respect to the same act or omission); *Cutshall v. Sundquist,* 193 F.3d 466, 474 (6th Cir.1999)), *cert. denied,* —— U.S. ——, 120 S.Ct. 1554, 146 L.Ed.2d 460 (2000); *Herbert v. Billy,* 160 F.3d 1131, 1136 (6th Cir.1998). The first step in determining whether a punishment is civil or criminal is to examine the statutory label. *Hudson,* 522 U.S. at 99, 118 S.Ct. 488; *Helvering,* 303 U.S. at 399, 58 S.Ct. 630; *Cutshall,* 193 F.3d at 473. However, the label applied to a sanction (*i.e.,* criminal, civil, *etc.*) is not necessarily

determinative as to the nature of the sanction for double jeopardy purposes. *Department of Revenue of Montana v. Kurth Ranch,* 511 U.S. 767, 779–80, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994).

 In certain circumstances, despite a "civil" label, a civil charge may fall under the auspices of the Double Jeopardy Clause if it is so punitive either in purpose or effect.[17] *Hudson,* 522 U.S. at 99, 118 S.Ct. 488; *United States v. Ward,* 448 U.S. 242, 248, 100 S.Ct. 2636, 65 L.Ed.2d 742 (1980); *Herbert v. Billy,* 160 F.3d 1131, 1136 (6th Cir.1998); *United States v. Beaty,* 147 F.3d 522, 524 (6th Cir.1998), *cert. denied,* 525 U.S. 1070, 119 S.Ct. 802, 142 L.Ed.2d 663 (1999). To make this determination, the court should rely on the following factors: 1) whether the sanction involves an affirmative disability or restraint; 2) whether it has been historically regarded as a punishment; 3) whether it comes into play only upon a finding of scienter;[18] 4) whether its operation will promote the traditional aims of retribution-punishment and deterrence;[19] 5) whether the behavior to which it applies is already a crime; 6) whether an alternative purpose to which it may rationally be connected is assignable for it; and 7) whether it appears excessive[20] in relation to the

---

15. In the context of re-sentencing, double jeopardy does not attach until the defendant has developed a legitimate expectation of finality in his original sentence. *United States v. DiFrancesco,* 449 U.S. 117, 139, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980); *Pasquarille v. United States,* 130 F.3d 1220, 1222 (6th Cir. 1997).

16. The enhancement of a sentence for subsequent convictions has been held not to violate the Double Jeopardy Clause. *Monge v. California,* 524 U.S. 721, 728, 118 S.Ct. 2246, 141 L.Ed.2d 615 (1998); *United States v. Pruitt,* 156 F.3d 638, 645–46 (1998). The rationale for this holding is that the enhancement is not a successive punishment but, rather, an increase of the original punishment.

17. The court notes that the Supreme Court has recognized that double jeopardy applies to adult criminal proceedings when charges have been previously adjudicated in juvenile

proceedings, even though such juvenile proceedings are considered "civil." *Breed v. Jones,* 421 U.S. 519, 529, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1975).

18. Scienter refers to whether the act was done knowingly. *Herbert v. Billy,* 160 F.3d 1131, 1137–38 (6th Cir.1998).

19. The Supreme Court has recognized that all civil remedies have some deterrence effect and indicated that this factor should not be determinative in applying double jeopardy to civil sanctions. *Hudson,* 522 U.S. at 102 n. 6, 118 S.Ct. 488; *Department of Revenue of Montana v. Kurth Ranch,* 511 U.S. 767, 777 n. 14, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994).

20. The Supreme Court has also recognized that the Eighth Amendment protects against excessive civil fines. *Hudson,* 522 U.S. at 103, 118 S.Ct. 488 (citing *Alexander v. United*

alternative purpose assigned. *Hudson,* 522 U.S. at 99, 118 S.Ct. 488; *Ward,* 448 U.S. at 249, 100 S.Ct. 2636; *Kennedy v. Mendoza–Martinez,* 372 U.S. 144, 168–69, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963); *Cutshall v. Sundquist,* 193 F.3d 466, 473 (6th Cir.1999), *cert. denied,* —— U.S. ——, 120 S.Ct. 1554, 146 L.Ed.2d 460 (2000); *United States v. Beaty,* 147 F.3d 522, 524–25 (6th Cir.1998), *cert. denied,* 525 U.S. 1070, 119 S.Ct. 802, 142 L.Ed.2d 663 (1999).

The burden is on the petitioner to show that double jeopardy attaches concerning a civil statute. The burden is heavy and requires the "clearest proof." *Kansas v. Hendricks,* 521 U.S. 346, 361, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997).

■■■ Double jeopardy has been frequently raised as an issue in the context of civil forfeitures. When a civil forfeiture proceeding is *in personam* in nature then it will be held to violate the Double Jeopardy Clause. *United States v. Bajakajian,* 524 U.S. 321, 331–33, 118 S.Ct. 2028, 141 L.Ed.2d 314 (1998)(recognizing that the hallmark of an *in personam* forfeiture proceeding is one where the government proceeds directly against the person). However, when a civil forfeiture proceeding is in the nature of *in rem,* then it will generally not be held violative of the Double Jeopardy Clause. *United States v. Ursery,* 518 U.S. 267, 274–75, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996); *United States v. Keeton,* 101 F.3d 48, 51 (6th Cir.1996). In such a situation, the court is required to engage in a two stage analysis. The first is to determine whether Congress designed the forfeiture as a remedial civil sanction. The second is to determine whether the statute is so punitive either in purpose or effect as to negate Congress' intention to establish a civil remedial mechanism. *Ursery,* 518 U.S. at 277–78, 116 S.Ct. 2135. It should be noted, however, that the Supreme Court has stated that even though a civil forfeiture statute may

be connected to criminal activity and may serve both civil and criminal purposes, it will not necessarily violate the Double Jeopardy Clause. *Ursery,* 518 U.S. at 292, 116 S.Ct. 2135; *Bennis v. Michigan,* 516 U.S. 442, 452, 116 S.Ct. 994, 134 L.Ed.2d 68 (1996).

■■■ The doctrine of collateral estoppel is closely related to the Double Jeopardy Clause. The doctrine of collateral estoppel mandates that once an issue of ultimate fact, necessary to the previous judgment, has been litigated and subject to a valid and final judgment, the same issue cannot be litigated again between the same parties in a future action. Collateral estoppel applies in both civil and criminal proceedings. *Ashe v. Swenson,* 397 U.S. 436, 443, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970)(citing *United States v. Oppenheimer,* 242 U.S. 85, 37 S.Ct. 68, 61 L.Ed. 161 (1916)); *United States v. Taylor,* 176 F.3d 331, 336 (6th Cir.1999). The Supreme Court has specifically held that the doctrine of collateral estoppel is embodied in the Fifth Amendment's guarantee against double jeopardy. *Ashe,* 397 U.S. at 446, 90 S.Ct. 1189. However, collateral estoppel will not apply under the Double Jeopardy Clause where the second prosecution has a lower standard of proof (*i.e.,* a civil proceeding). *Dowling v. United States,* 493 U.S. 342, 349, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990). An example of this is a subsequent civil forfeiture proceeding. *One Lot Emerald Cut Stones v. United States,* 409 U.S. 232, 234–36, 93 S.Ct. 489, 34 L.Ed.2d 438 (1972).

■■■ Procedurally, as a general matter, the facts constituting double jeopardy must be shown by pleading it as a defense. *United States v. Wilson,* 32 U.S. 150, 159, 7 Pet. 150, 8 L.Ed. 640 (1833); *Douglas v. Nixon,* 459 F.2d 325, 327 (1972), *cert. denied,* 409 U.S. 1010, 93 S.Ct. 453, 34 L.Ed.2d 303 (1972). Further, it should be raised by motion prior to trial.[21]

*States,* 509 U.S. 544, 113 S.Ct. 2766, 125 L.Ed.2d 441 (1993)).

**21.** A denial of a pre-trial motion to dismiss on double jeopardy grounds is immediately ap-

Fed.R.Crim.P. 12(b). Initially, the defendant has the burden of showing a non-frivolous claim of double jeopardy. At that point, the burden shifts to the government to show by a preponderance of the evidence that double jeopardy should not apply. *United States v. Sargent Electric Co.*, 785 F.2d 1123, 1125 (3rd Cir.1986), *cert. denied,* 479 U.S. 819, 107 S.Ct. 82, 93 L.Ed.2d 36 (1986); *United States v. Garcia,* 721 F.2d 721, 723 (11th Cir.1983); *United States v. Stricklin,* 591 F.2d 1112, 1117–18 (5th Cir.1979), *cert. denied,* 444 U.S. 963, 100 S.Ct. 449, 62 L.Ed.2d 375 (1979).

■ The defense of double jeopardy is a personal right that may be waived, however, the waiver must be intelligent and voluntary. *United States v. Broce,* 488 U.S. 563, 568, 109 S.Ct. 757, 102 L.Ed.2d 927 (1989); *United States v. Branham,* 97 F.3d 835, 842 (6th Cir.1996), *denial of habeas corpus petition affirmed,* 127 F.3d 1103 (6th Cir.1997). However, if the defendant merely fails to raise the issue before the trial court, then it is forfeited. *Branham,* 97 F.3d at 842.

■ Finally, if a defendant successfully seeks reversal of his conviction on appeal on any ground other than insufficiency of evidence, then double jeopardy does not bar retrial. *Richardson v. United States,* 468 U.S. 317, 323, 104 S.Ct. 3081, 82 L.Ed.2d 242 (1984); *Hudson v. Louisiana,* 450 U.S. 40, 43, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981); *United States v. Scott,* 437 U.S. 82, 90–91, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978); *Terry v. Potter,* 111 F.3d 454, 456 (6th Cir.1997). Although a reversal on the sufficiency of the evidence will bar re-trial, a reversal on the weight of the evidence will not invoke double jeopardy. *Tibbs v. Florida,* 457 U.S. 31, 42–43, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982).

pealable. *Abney v. United States,* 431 U.S. 651, 657–58, 97 S.Ct. 2034, 52 L.Ed.2d 651

## ANALYSIS

■ The essence of the Masks' argument is that the Farm Service Agency's failure to issue a false claim penalty should estop the government from making any such claim before this tribunal as violative of the Double Jeopardy Clause. The Masks contend that as the quality of the cotton has already been litigated before the Farm Service Agency, the government should be estopped from litigating the issue of the alleged false claims, as the alleged false claims concerned the quality of the cotton.

First, the court must reject the Masks' argument on the basis of the findings of the administrative record of the appeal. The administrative record before the court does not present any finding of fact that the cotton was of acceptable quality. Such a finding would be necessary to apply collateral estoppel and double jeopardy as to the charges of false claims. Further, the court notes that any finding regarding the quality of the cotton was not an issue of ultimate fact necessary to the previous judgment. Thus, the Masks' argument must be rejected on this ground.

Next, the court recognizes that the Supreme Court has held that it is permissible to apply criminal and civil sanctions for the same act. The rulings of the Farm Service Agency and the National Appeals Division were clearly civil in nature. Thus, as a *prima facie* matter, this situation appears to fall within this exception to the Double Jeopardy Clause.

However, even assuming that the Masks' argument survives to this point and that the Masks have presented an arguable claim that the civil sanction applied by the Farm Service Agency might constitute "punishment" for the purposes of double jeopardy, the court must reject it under the *Hudson—Ward—Kennedy* test, *supra.* The Masks do not present any analysis

(1977).

applying the *Hudson—Ward—Kennedy* test in support of its motion that double jeopardy should apply. However, a brief review of the facts presented in this motion indicate that any application of the test would clearly show that double jeopardy should not apply. There is little doubt, if any, that the fine leveled by the Farm Service Agency was not punishment and had no relation to whether the Masks committed fraud. Moreover, even if the fine was a punishment such that double jeopardy would attach, because the Masks prevailed on appeal before the National Appeals Division, double jeopardy would not attach as they prevailed on the appeal.

## CONCLUSION

Accordingly, for the foregoing reasons, the Masks' motion to dismiss under double jeopardy and collateral estoppel is DENIED.